UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 22-CR-404 (JEB) |
| v. : | |
| : | |
| ISREAL EASTERDAY, : | |
| : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR REVOCATION OF DETENTION ORDER**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby opposes Defendant Isreal Easterday's Motion for Revocation of Detention Order. (ECF No. 16.) At the detention hearing in the district of arrest, the Honorable Alicia M. Otazo-Reyes determined that the defendant "exhibited a callous disregard for the safety and well-being of law enforcement officers and the integrity of federal property," and she ordered him detained. *United States v. Easterday*, 22-MJ-4089-LMR (S.D. Fl. Dec. 15, 2022). Because Judge Otazo-Reyes correctly concluded that no condition or conditions could assure the safety of the community if the defendant were to be released, the defendant's motion should be denied.

**BACKGROUND**

a. *The Defendant's Assault on a Capitol Police Officer and Subsequent Breach of the Capitol Building during the Capitol Riot*

The defendant Isreal Easterday is charged with participating in the riot at the United States Capitol on January 6, 2021. As set forth in the Statement of Facts supporting the arrest warrant (ECF 1), a publicly available video ("YouTube Video 1") shows defendant with a group of rioters

1

outside the East Rotunda door from approximately 2:17 pm to 2:26 pm.[1]  A large group of rioters were congregated outside the East Rotunda door, and some of the rioters had broken its windows using, among other things, flag poles to smash the glass.  USCP Officer J.P. and other police officers were trying to prevent the rioters from breaching the door and entering the Capitol Building.  In a still image taken from YouTube Video 1, the defendant (circled in yellow) is shown in Image 1 below wearing a black beanie, carrying a confederate flag, and participating with the group of rioters trying to enter the East Rotunda door:



*Image 1*

As shown in YouTube Video 1, the defendant approached a group of police officers, including USCP Officer J.P., and appeared to put down the confederate flag.  A moment later, defendant (circled in yellow) pointed what appears to be some sort of bottle at USCP Officer J.P.

---

[1] This video clip has been submitted to the Court and defense counsel via USAfx as Exhibit A.

(circled in blue) and sprayed him with what appears to be a chemical irritant (circled in red), as shown in Image 2 below.



*Image 2*

Image 3 below, captured approximately two seconds after Image 2 above, shows USCP Officer J.P. (circled in blue) turning away from the defendant in reaction to being sprayed.



*Image 3*

USCP Officer J.P. has described to law enforcement, in sum and substance, that he believed he was sprayed with mace; that the irritant that sprayed him was different from the pepper spray used by the United States Capitol Police; that the irritant got in his eyes and caused him pain.

USCP Officer J.P. also has viewed YouTube Video 1 and stated that the incident in which he recalls being assaulted with a chemical irritant by a rioter outside the East Rotunda door on January 6 is the incident shown on YouTube Video 1 described above. [2]

Within minutes of the assualt described above, rioters breached the East Rotunda door for the first time, at approximately 2:26 pm.  Defendant entering the U.S. Capitol through this breached door at approximately 2:39 p.m., within approximately 13 minutes of its initial breach. Image 4 below shows the defendant, a few seconds after he joined the mob inside the Capitol, pulling other rioters into the U.S. Capitol through the door:



*Image 4*

Defendant traveled through various rooms and hallways of the Capitol before exiting at approximately 2:51 pm.

---

[2]   USCP Officer J.P. testified in the trial of *United States v. Strand*, 21 Cr. 85 (D.D.C.).  The transcript of his testimony is attached as Exhibit B.  He describes being assaulted by a rioter with what he believes was mace at pages 531-532, 541-542, and 563-564.

4

*b. The Defendant's Arrest on Complaint and Subsequent Indictment*

On December 2, 2022, an arrest warrant was issued in the District of Columbia, charging defendant, a resident of Kentucky, with six crimes, including assaulting an officer using a dangerous weapon in violation of 18 U.S.C. § 111(a)(1) and (b), and other offenses related to unlawful presence, illegal conduct, and possession of a deadly or dangerous weapon in a restricted area and in a Capitol Building.  (ECF 1, 7.)  The FBI located the defendant on a boat off the coast of Florida and arrested him on December 8, 2022.[3]

A duly empaneled grand jury in the District of Columbia indicted defendant on December 14, 2022, charging him with violations of 18 U.S.C. § 231(a)(3) (Civil Disorder); 18 U.S.C. §§ 111(a)(1) and (b)(Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon); 18 U.S.C. § 1752(a)(1) and (b)(1)(A); (Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon); 18 U.S.C. § 1752(a)(2) and (b)(1)(A) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon); 18 U.S.C. § 1752(a)(4) and (b)(1)(A) (Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); 40 U.S.C. § 5104(e)(2)(F)(Act of Physical Violence in the Capitol Grounds or Buildings); and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating or Picketing in a Capitol Building).

---

[3] The Government and defendant disagree as to whether defendant's conduct during the FBI arrest reflects his "cooperation" or merely his recognition that he was surrounded and had no choice but to surrender.  This factual dispute, however, is irrelevant to the instant motion because the Government contends that detention is warranted here based on danger to the community alone, and not risk of flight.

5

### c. The Detention Hearing and Detention Order

The Government moved for detention under 18 U.S.C. §§ 3142(f)(1)(A) and 3142(f)(2)(A). On December 13, 2022, a detention hearing was held in the district of arrest, the Southern District of Florida.[4] The Government contended that detention was warranted on the grounds of both risk of flight and danger to the community. FBI Special Agent Andy Martin testified for the Government and Mark Detweiler, a friend of the defendant who was with him in Florida on a separate boat, testified for the defense. Exhibit C, Transcript of Detention Proceedings, *United States v. Easterday*, 22-MJ-4089-LMR (S.D. Fl. Dec. 13, 2022) ("Transcript" or "Tr.").

Special Agent Martin testified regarding the video evidence showing the defendant's assault on a Capitol Police Officer while the police were trying to prevent the rioters from breaching the East Rotunda Door. Tr. 11-15, 27-31. Special Agent Martin further described how the rioters first managed to breach the East Rotunda door minutes after the incident. *Id.* The Government also proffered evidence that a publicly available photograph shows the defendant heavily armed while participating in a counterprotest in summer 2020. *Id.* at 32.

The Government also elicited on cross-examination that, according to Mr. Detweiler, the defendant had a gun on his boat at the time he was arrested. (The defendant was carrying a gun even though, according to the testimony of Mr. Detweiler, the defendant was planning to sail to the Caribbean on a religious mission to give out bibles; Mr. Detweiler explained "The plan was to

---

[4] The defendant waived an identity hearing.

go out and just kinda see where God takes us, and, you know, we were just going to follow God and see where He would take us on this journey.")  *Id.* at 40.

The Court denied the defendant's motion for release.  The court noted that "[i]f convicted, Easterday faces a significant amount of time in prison, with the Government estimating a sentencing guideline range of 87 to 108 months, including anticipated enhancements."  Exhibit D, Order of Detention, *United States v. Isreal Easterday*, 22-MJ-4089-LMR (S.D. Fl. Dec. 15, 2022) ("Detention Order").  The court held:

> In light of Easterday's documented intentional attack on a law enforcement officer protecting the United States Capitol with a chemical substance that caused him pain and irritation and his subsequent breach, with other rioters, of the United States Capitol notwithstanding efforts of Capitol Police Officers to protect the premises, the Court concludes that Easterday has exhibited a callous disregard for the safety and well-being of law enforcement officers and the integrity of federal property. Accordingly, the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community if Easterday is released on bond.

Detention Order 2-3.

## LEGAL STANDARD

Pursuant to the Bail Reform Act (BRA), 18 U.S.C. § 3142 *et seq.*, the Court "shall order" that a defendant be detained pretrial if, after a hearing, the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  Detention must be supported by clear and convincing evidence when the justification is the safety of the community, 18 U.S.C. § 3142(f), and preponderance of the evidence when the determination is based on risk of flight, *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).  Regardless of whether the defendant poses a flight risk, "danger to the community alone is sufficient reason to order pretrial detention."

7

*United States v. Chrestman*¸ 525 F. Supp. 3d 14, 22 (D.D.C. 2021) (citing *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

On a motion to revoke a detention order pursuant to 18 U.S.C. § 3145(b), this Court reviews the magistrate judge's detention order *de novo*. *See Chrestman*¸ 525 F. Supp. 3d at 23, 23 n.5 (adopting the uniform conclusion of every circuit to have addressed the issue that the standard of review is *de novo*).

## ARGUMENT

The Government submits that the court in the district of arrest, following an extensive detention hearing, correctly concluded that that no condition or combination of conditions would reasonably assure the safety of any other person and the community if Easterday were released on bond. The Government thus opposes defendant's motion on grounds of danger to the community. The Government will not ask this Court to contradict the conclusion below that the defendant does not pose sufficient risk of flight to warrant detention on that ground.

In considering whether Easterday should be detained pretrial, this Court must consider four factors: (1) the nature and circumstances of the offenses, (2) the weight of the evidence against the defendant, (3) the defendant's history and characteristics, and (4) the danger to the community if the defendant were to be released. 18 U.S.C. § 3142(g). All four factors weigh in favor of pretrial detention. Each are addressed in turn.

a. *Nature and Circumstances of the Charged Offenses*

The nature and circumstances of the defendant's January 6 conduct, supporting the charged offenses, weigh heavily in favor of detention. Like all rioters on January 6, Easterday was a member of a thousand-strong mob that attacked the Capitol and succeeded in halting the operation of the United States Congress. Easterday, however, distinguished himself from the crowd by

conducting a brazen and unprovoked attack on a uniformed Capitol Police officer in broad daylight. This assault rendered the victim officer vulnerable as rioters sought to overcome him and his fellow officers in a vicious struggle to breach the East Rotunda Door. Easterday's attack not only caused pain to USCP Officer J.P., but it also directly compromised his ability to guard the Capitol—specifically, to guard the East Rotunda Door, which rioters would shortly breach, providing the mob with another point of access to the interior of the Capitol building. Easterday's role in this critical breach was significant.

The D.C. Circuit has categorically distinguished those rioters who engaged in violence and destruction on January 6, placing a thumb on the scale of detention for those rioters. *See United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). Further, Chief Judge Howell has outlined a number of factors that the Court may consider in assessing the comparative culpability of each January 6 defendant in relation to other rioters. *See Chrestman*, 525 F. Supp. 3d at 26. "[A] defendant's carrying or use during the riot of a dangerous weapon," is a factor that distinguishes more culpable defendants. *Id.* Here, regardless of whether Easterday carried the mace with him or received it from a fellow rioter, he used it to attack police. Thus, even without the other Section 3142(g) factors, the nature and circumstances of Easterday's offenses are extreme and weigh heavily in favor of detention.

Detention here would be consistent with detention orders issued to other Capitol Riot participants accused of assaulting officers with dangerous weapons. *See, e.g., United States v. Brockhoff*, 590 F. Supp. 3d 295, 305 (D.D.C. Mar. 10, 2022) (J. Kollar-Kotelly) (denying defendant's motion to revoke detention order based on finding that defendant's release would pose threat to public safety); Memorandum Opinion, *United States v. Fitzsimons*, 21-Cr-158 (RC) (D.D.C. Sept. 24, 2021) (same); Memorandum Opinion, *United States v. Gieswein*, 21-Cr-24

(EGS) (D.D.C. July 7, 2021) (same); Memorandum Opinion, *United States v. McAbee*, 21-Cr-35 (EGS (D.D.C. Sept. 3, 2022) (same).

b. *Weight of the Evidence Against the Defendant*

The weight of the evidence against the defendant is overwhelming. Easterday's assault was captured on a video in which Easterday's face is visible. Easterday is also captured extensively in other photo and video footage of January 6, showing him both inside and outside the Capitol. Moreover, the officer victim has already testified credibly regarding the assault in another proceeding. A witness who knows Easterday personally identified him in images from the Capitol and law enforcement agents who arrested him can also provide further identification. The Government is also continuing to review information seized from Easterday's social media accounts, which likely will provide further corroborating evidence.

c. *Defendant's History and Characteristics*

Defendant's motion portrays his life as a simple one oriented around family and religion, following a rural horse-and-buggy upbringing. This portrayal is belied by the evidence showing that defendant chose to travel from Kentucky to Washington, D.C. to participate in the events of January 6; while there, he carried a confederate flag and worked his way to the front of a violent mob trying to breach the East Rotunda Door; and he then used mace or another chemical irritant in a vicious attack on a Capitol Police Officer. Defendant served as a catalyst for other rioters during the Capitol Riot, pulling more and more rioters into the Capitol through the breached East Rotunda Door. Defendant was not a follower on January 6; he was an aggressor.

Defendant's conduct on January 6 follows at least one other action he took in 2020 to use weapons and intimidation in furtherance of his political views. At an anti-Black Lives Matter

protest in summer 2020, defendant brandished a large rifle, as shown in Image 6, below (Easterday wearing the white shirt on the left):



*Image 6*

The Government is not aware of any criminal history of the defendant, and the Government does not contend that the conduct in the photograph above was illegal either. The Government merely furnishes this information as a rejoinder to the portrayal of the defendant's allegedly bucolic and pious lifestyle in his motion, which the Government believes to be, at minimum, incomplete.

Regardless, it is the nature and circumstances of the offense, the weight of the evidence, and the danger to the community posed by the defendant's release that warrant detention here.

  d. *Danger to the Community Posed by the Defendant's Release*

Easterday's actions at the Capitol alone make him a serious risk of danger to the community. As the D.C. Circuit determined in *Munchel*, violent participants in the Capitol riot are in a "different category of dangerousness." *Munchel*, 991 F.3d at 1284. Specifically, *Munchel* distinguished rioters who assaulted police officers as falling into an elevated category of dangerousness. *Id.* Other courts in this district have made the same observation: "Indeed, if any crime establishes danger to the community and a disregard for the rule of law, assaulting a riot-

gear-clad police officer does," *United States v. Fairlamb*, No. 1:21-CR-120-RCL, 2021 WL 1614821, at *5 (D.D.C. Apr. 26, 2021). Violence against police in the context of a riot that succeeding in halting the functioning of the United States government is a measure of a defendant's disregard for the rule of law, a quality that bears on both the seriousness of the offense conduct and the ultimate inquiry of whether a defendant will comply with conditions of release meant to ensure the safety of the community. Given Easterday's violent conduct on January 6, the risk of danger to the community should Easterday be released is high. This factor weighs in favor of detention.

## **CONCLUSION**

The defendant's detention is supported by clear and convincing evidence under the factors set forth in 18 U.S.C. § 3142(g), and no condition or combination of conditions can reasonably assure the safety of the community if he is released. Accordingly, the Government respectfully requests that the defendant's motion to revoke the detention order and for pretrial release be denied.

Respectfully submitted,
MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:    /s/
JASON M. MANNING
NY Bar No. 4578068
Trial Attorney, Detailee
1400 New York Ave NW, 11th Floor
Washington, D.C. 20005
(202) 514-6256
jason.manning@usdoj.gov