IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>v.   )<br>)<br>ISREAL JAMES EASTERDAY,   )<br>Defendant.   )<br>) | Case No. 1:22-cr-00404<br>Hon. James E. Boasberg |

**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S OMNIBUS MOTION IN LIMINE TO PRECLUDE IMPROPER DEFENSE ARGUMENTS AND EVIDENCE**

The Court should deny the government's scattershot motion to "preclude the defendant from introducing evidence or making arguments" with respect to seven enumerated topics.[1] For starters, the government lacks a good faith basis to seek a judicial order barring the defense from making plainly inappropriate arguments about possible punishment, or statements that would encourage jury nullification. *See* Gov't Mot. (ECF 37) at 14-17 (Topic #6). If the Court is inclined to grant such a motion, it should similarly bar the government from, for example, vouching for the credibility of law enforcement officers or making reference to Mr. Easterday's potential decision not to testify at trial, or engaging in other prosecutorial misconduct.

---

[1] On page 1 of its motion, the government states that it "present[ed] the above *eight* issues," Gov't Mot. (ECF 37) at 1 (emphasis added), but the text of the motion and the enumerated list identify seven.

Any ruling as to the remaining issues, i.e., Topic #1-5, and 7, "should be deferred until trial '[when] decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole.'" *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 175 (D.D.C. 2015) (citation omitted). The government's anticipated objections to the introduction of evidence based upon "security needs," "danger to national security," evidence as to statements by former President Trump, inaction by law enforcement, First Amendment protection, or conduct in relation to others are far better addressed in the factual context of the trial rather than in an ad hoc advisory opinion as to hypothetical circumstances at trial. *See* 21 Wright & Miller, *Fed. Prac. & Proc. Evid.* § 5037.10 (2d ed. 2022) (discouraging parties from filing omnibus motions in limine seeking anticipatory rulings as to large numbers of hypothetical issues that may never arise at trial). Such a ruling would be consistent with this Court's order on nearly identical motions in limine by the government.[2]

---

[2] *See, e.g.*, *United States v. Marc Bru*, 1:21-cr-00352, Order on Gov. Mot. In Limine (ECF 65) (JEB) (upon consideration of an unopposed motion, denying government's request to preclude *pro se* defendant from arguing various defenses as premature (i.e., law enforcement inaction, defense of others, and prior good acts/culpability relevant to others on Jan. 6) and moot (i.e., jury nullification); but precluding the defense from questioning witnesses about precise location of Capitol police cameras except allowing for possibility of *in camera* proceedings if necessary at trial, precluding the defense from cross-examining witnesses on U.S. Secret Service tactics and operations unless such topics are elicited on direct exam, and precluding the defense from arguing entrapment-by-estoppel related to former President Trump and First Amendment defenses).

**I. No National Security Exception to the Federal Rules of Evidence Exists.**

The government first argues that evidence of the position of U.S. Capitol Police Security surveillance cameras "should be excluded in light of the ongoing security needs of the Capitol," Gov't Mot. (ECF 37) at 4, and that any probative value would be "substantially outweighed by the danger to national security." *Id.* The government also seeks to preclude questioning of government witnesses regarding security protocols at the Capitol involving those protected by the Secret Service. *Id.* at 6-8. The defense does not know if such evidence will be relevant and admissible at trial pursuant to the Federal Rules of Evidence. But if it is, concerns about "ongoing security needs" and the potential "danger to national security" from its admission is not a valid basis upon which to exclude such evidence.

Admission of evidence at trial depends solely upon its relevance to material issues pursuant to the Federal Rules of Evidence, which say nothing about excluding evidence based upon the government's security concerns. *See United States v. Libby*, 453 F. Supp. 2d 35, 44 n.8 (D.D.C. 2006) ("[T]he fact that evidence may be classified and thus impact important national security interests is not, by itself, sufficient to exclude the evidence."). Furthermore, "[t]he right of the defendant to present evidence" is a fundamental component of a defendant's basic right to present a defense. *Taylor v. Illinois*, 484 U.S. 400, 409 (1988). Accordingly, the government's effort to both "simultaneously prosecut[e] the defendant and attempt[] to restrict his ability to use information that he feels is necessary to

3

defend himself against the prosecution" because of the nature of the information implicates that basic right. *See, e.g.*, *United States v. Fernandez*, 913 F.2d 148, 154 (4th Cir. 1990) (addressing introduction of classified information at trial).

Indeed, the Classified Information Procedures Act ("CIPA") provides the principal statutory framework for the handling of classified information in federal courts, but "creates no new rule of evidence regarding admissibility." *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989). CIPA states explicitly that "[w]ritings, recordings, and photographs containing classified information may be admitted into evidence without change in their classification status." CIPA § 8(a). While CIPA authorizes courts to make redactions to "prevent unnecessary disclosure of classified information," or even to make substitutions, such measures are permitted only so long as they do not impair the defendant's ability to present his defense. *Id.* §§ 6(c); 8(b). In other words, even in the context of classified information, exclusion of relevant evidence is not permitted simply because it may implicate national security concerns.

The government is not without recourse if it believes that the introduction of admissible evidence or cross examination at a public trial would harm national security. Although "[t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials[,]" *Presley v. Georgia*, 558 U.S. 209, 215 (2010), the government may seek to preclude the public disclosure of evidence in light of a valid "interest in inhibiting the disclosure of sensitive

4

information." *Waller v. Georgia*, 467 U.S. 39, 45 (1984). Although the admission of evidence outside of public view "will be rare" and "the balance of interests must be struck with special care," *id.*, exclusion of admissible evidence from public view pursuant to the four-part test outlined in *Waller* is a far more appropriate remedial measure than exclusion of the evidence altogether.

## II. Evidence of Former President Trump's Statements May Be Admissible at Trial

The Court should defer ruling on the admission of evidence as to potentially applicable defenses. Nonetheless, if the Court decides to address the government's arguments pretrial, the government's arguments misstate the law.

### A. Evidence of Trump's Statements Would Potentially Be Admissible Regarding Intent As to Some of the Charges in the Superseding Indictment.

Former President Trump made numerous statements on and before January 6, 2021, that outcome-determinative fraud had tainted the election results, that the Vice President had the authority to (and might) alter those results, that his supporters should go to the Capitol, and the former President did not tell those who had entered the Capitol Grounds to leave after they had entered, but instead reasserted that fraud had occurred. *See* Indictment, *United States v. Trump*, Case No. 1:23-cr-257, ECF No. 1 (D.D.C. Aug. 1, 2023). As numerous courts have ruled, out-of-court statements by the former President on and before January 6, 2021, may be admissible not for the truth asserted, but as to the effect on the listener and mens rea of charged offenses arising from compliance with his directions. *See, e.g.,*

5

*United States v. Eicher*, 2023 WL 3619417, at \*6 (D.D.C. May 23, 2023) (holding that "[e]vidence related to the former President's statements urging supporters to, for example, 'go to the Capitol,'" [] may be probative as to defendant's required intent" as to 18 U.S.C. § 1752(a)(1) count).[3]

### B. Evidence of Trump's Statements Would Potentially Be Admissible as to the Public Authority Defense.

"[I]n compelling circumstances the law will not deny a defense to individuals who have mistakenly relied on the authority of a public official." *United States v. Barker*, 546 F.2d 940, 947 n.21 (D.C. Cir. 1976). "[T]o merit a jury instruction on the public authority defense, a criminal defendant must produce evidence that '(1) a government official authorized him to take what would otherwise be an illegal action; (2) that this official had the actual authority to permit the action; and (3) that the defendant reasonably relied on the official's authorization.'" *Eicher*, 2023 WL 3619417, at \*3; *accord* Seventh Circuit Pattern Federal Jury Instructions,

---

[3] The Court should bar the government from taking factually inconsistent positions as to the impact of Mr. Trump's conduct and words in Case No. 1:23-cr-257 and this case. Although the doctrine of non-mutual collateral estoppel does not apply to the government, the prosecution's potential use of factually inconsistent theories in Mr. Trump's case in an adjacent courtroom (arguing that, for example, Mr. Trump deceived supporters into believing the Vice President could and might change the election results, directed followers to go to the Capitol, and advised them that ordinary rules no longer applied due to the election fraud) implicates the fundamental fairness required by the Due Process clause. *See Smith v. Groose*, 205 F.3d 1045, 1053-54 (8th Cir. 2000) (finding due process violation where prosecution used "inconsistent, irreconcilable" theories to secure convictions against two defendants in different trials for the same offenses); *Thompson v. Calderon*, 120 F.3d 1045, 1058 (9th Cir. 1997) (en banc), *rev'd on other grounds*, 523 U.S. 538 (1998) (stating "it is well established that when no new significant evidence comes to light a prosecutor cannot, in order to convict two defendants at separate trials, offer inconsistent theories and facts regarding the same crime").

6

§ 6.06 ("The elements of the public authority defense are: (1) an agent of an authority authorized the defendant to engage in conduct charged in the indictment; (2) the agent had actual authority to grant this authorization; and (3) the defendant reasonably relied upon this authorization."); Model Penal Code § 3.03(3)(b) (stating that justification applies "when the actor believes his conduct to be required or authorized to assist a public officer in the performance of his duties, notwithstanding that the officer exceeded his legal authority").[4]

The defense of public authority "often arises when defendants claim to have been working as government informants conducting drug deals or other clearly illicit conduct at the behest of their official handlers." *Eicher*, 2023 WL 3619417, at *2; *accord United States v. Fulcher*, 250 F.3d 244, 253 (4th Cir. 2001) (defense applies when a defendant claims "reasonable reliance upon the actual authority of a

---

[4] Citing *United States v. Colon Ledee*, 967 F. Supp. 2d 516, 519 (D.P.R. 2013), the government argues that the failure to raise this defense in pretrial filings constitutes a forfeiture of the defense, and "the defendant should be precluded from raising [the public authority defense] at trial." Gov't Mot. (ECF 37) at 12. The government is wrong, and *Colon Ledee* is inapposite. Federal Rule of Criminal Procedure 12.3(a)(1) requires pretrial notice "of actual or believed exercise of public authority *on behalf of a law enforcement agency or federal intelligence agency*." Fed. R. Crim. P. 12.3(a)(1) (emphasis added). Former President Trump was neither. Additionally, the government's motion in limine makes clear that the assertion of a public authority defense would not come as a surprise to the government.

*Colon Ledee* does not address the public authority defense, and instead addressed a defendant's post-trial arguments regarding selective prosecution and entrapment by estoppel. 967 F. Supp. 2d at 519. Federal Rule of Criminal Procedure 12(b)(3) explicitly requires that the defense of *selective prosecution* be raised by the pretrial motions deadline, and the court held that the failure to raise that defense pretrial made the argument untimely. That decision has no bearing in this case, as Mr. Easterday does not assert that he was selectively prosecuted. Accordingly, the government's motion to preclude the defense from asserting that he was selectively prosecuted, Gov't Mot. (ECF 37) at 15-16, should be denied as moot.

government official to engage" in the conduct at issue). The primary difference between the public authority defense and entrapment by estoppel is that "when a public authority defense is invoked, 'the defendant engages in conduct at the request of a government official that the defendant knows to be otherwise illegal, while in the case of entrapment by estoppel, because of the statements of an official, the defendant believes that his conduct constitutes no offense.'" *Eicher*, 2023 WL 3619417, at *2; *accord United States v. Stallworth*, 656 F.3d 721, 726–27 (7th Cir. 2011) (same); 2 Wayne R. Lafave, *Substantive Criminal Law* § 10.2(b) n.14 (3d ed. 2018) (same). In this case, the defense of public authority may apply with respect to counts 4, 5, 6, 7, and 9 as to the element of conduct occurring within otherwise restricted areas within the U.S. Capitol and grounds.

The government argues that the defendant should be precluded from presenting a public authority defense as a matter of law because (1) "then-President Trump [did not] ma[ke] a 'statement' of law"; and (2) former President Trump lacked actual authority to authorize the defendant's conduct. Gov't Mot. (ECF 37) at 9-12 (citing *United States v. Sheppard*, 2022 WL 17978837, at *9 (D.D.C. Dec. 28, 2022), and *United States v. Chrestman*, 525 F. Supp. 3d 14, 32 (D.D.C. 2021), among others). Neither of these arguments should bar the presentation of the public authority defense in this case because the public authority justification does not require an official to provide an explicit statement of law, *Cox v. State of La.*, 379

U.S. 559, 568–70 (1965), and the Executive branch has authority as to time, place, and manner restrictions with respect to federal buildings, *see* 40 U.S.C. § 1315.

First, the public authority defense requires a showing "that a government official affirmatively communicated to the defendant the official's approval *of the conduct at issue.*" *Eicher*, 2023 WL 3619417, at \*3 (emphasis added, quoting *United States v. Alvarado*, 808 F.3d 474, 485 (11th Cir. 2015)); *United States v. Mergen*, 764 F.3d 199, 205 (2d Cir. 2014) (defense of public authority "exists where a defendant has in fact been authorized by the government to engage in what would otherwise be illegal activity"); *United States v. Stallworth*, 656 F.3d 721, 726-27 (7th Cir. 2011) ("[W]ith the public authority defense the defendant engages in conduct that the defendant knows to be otherwise illegal but that has been authorized by the government"); *United States v. Fulcher*, 250 F.3d 244, 254–55 (4th Cir.2001) ("[W]e adopt the unanimous view of our sister circuits that the defense of public authority requires reasonable reliance upon the actual authority of a government official to engage him in a covert activity.").

For example, in the prototypical example of a defendant who agrees to conduct a controlled drug purchase at the behest of a law enforcement agency, the law enforcement officers running such an operation do not tell a defendant that buying heroin does not violate the law. Instead, the officers state that the officers have authorized the defendant to engage in such conduct pursuant to their authority to conduct investigations into drug trafficking.

9

Similarly, in the most analogous Supreme Court decision addressing this defense in the context of a protest, *Cox v. State of Louisiana*, 379 U.S. 559 (1965), the Court held that statements by the local police chief that protesters were "confined" to the area across the street from a courthouse, and the sheriff that he had "no objection" to the demonstration "on that side of the street," barred conviction under a state statute that prohibited "picket[ing] or parad[ing] in or near" a court building with the intent of interfering with or obstructing the administration of justice. *Id.* at 569-70. According to the Court, such a statute "foresees a degree of on-the-spot administrative interpretation by officials charged with responsibility for administering and enforcing it," in the context of "determinations concerning the time, place, duration, and manner of demonstrations." *Id.* at 568-69. Moreover, the Court reasoned that "demonstrators, such as those involved here, would justifiably tend to rely on this administrative interpretation of how 'near' the courthouse a particular demonstration might take place." *Id.* at 569. In sum, the Supreme Court concluded that administrative direction as to *where* a protest could take place was sufficient to bar prosecution for protesting in that place.

The government's argument that the public authority defense requires more, and specifically that the public authority defense requires an official to provide "*a conclusion or statement of law*," Gov't Mot. (ECF 37) at 9 (emphasis added), confuses – as many courts have done – a justification defense based on reliance on an official

10

statement of law with a justification defense based on reliance on authorization of conduct by an official with authority. Reliance on an express or implied statement of law by an official, to be clear, is a common law defense to criminal liability. *See Raley v. Ohio*, 360 U.S. 423, 425-26 (1959) (witnesses advised at hearing that they could invoke right to silence could not be prosecuted for invoking privilege); Model Penal Code § 2.04(3)(b) ("A belief that conduct does not legally constitute an offense is a defense to a prosecution for that offense based upon such conduct when: … (b) he acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in … (iv) an official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration or enforcement of the law defining the offense.").

But so is reliance on an official's authorization of *conduct* that an actor knows would otherwise violate the law, as long as the official reasonably appears to possess the authority to authorize the conduct. *See, e.g.*, *Alvarado*, 808 F.3d at 484 ("A defendant may assert a public authority affirmative defense when he has knowingly acted in violation of federal criminal law, but has done so in reasonable reliance on the authorization of a governmental official."); Model Penal Code § 3.03(3)(b) (conduct is justifiable "when the actor believes his conduct to be … authorized to assist a public officer in the performance of his duties, notwithstanding that the officer exceeded his legal authority"). Indeed, the government's argument that the public authority defense requires reliance on an

11

official statement of law quotes Judge Bates' opinion in *United States v. Sheppard*, 2022 WL 17978837, at *8 (D.D.C. Dec. 28, 2022), which in turn quotes Judge Merhige's concurring opinion in *United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976) (Merhige, J., concurring). Judge Merhige's concurring opinion in *Barker* refers to the justification defense of reliance upon an official statement of law, and does not purport to eliminate the distinct common law justification based upon official authorization of *conduct*. Just as in the example of a controlled drug purchase, and as noted in numerous opinions by the Courts of Appeals, all that is required to assert the public authority defense (along with evidence of authority, discussed below) is official "approval *of the conduct at issue*," *Alvarado*, 808 F.3d at 485 (emphasis added), not a statement of law.

Second, like the law enforcement officials in *Cox*, the Executive Branch is entrusted with the authority to establish time, place, and manner conditions on protests at or near federal buildings. *See* 40 U.S.C. § 1315 (providing that the Secretary of Homeland Security "shall protect the buildings, grounds, and property that are owned, occupied, and secured by the Federal Government"); *see also United State v. Washington*, __ F.4th __, 2023 WL 5440527, at *2 (3d Cir. Aug. 24, 2023) ("The Department of Homeland Security has a statutory duty to protect federal buildings, 40 U.S.C. § 1315"); *cf. Singh v. S. Asian Soc'y of George Washington Univ.*, 572 F. Supp. 2d 1, 7 (D.D.C. 2008) (holding that 40 U.S.C. § 1315 does not

12

specify the manner or specific course of action by which the Executive branch provides security for federal buildings and property).

To be sure, the Capitol Police also have authority to protect the Capitol, 2 U.S.C. § 1961, as do the D.C. Metropolitan police, *see* D.C. Code Ann. § 10-503.16, but the statutory authority of the government at any level is subject to limitations imposed by the First Amendment. *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 584 (D.D.C. 1972), *aff'd*, 409 U.S. 972 (1972) (noting that the Capitol Grounds – excluding Senate and House floors and committee rooms – "have traditionally been open to the public," that legislating is not "incompatible with the existence of all parades, assemblages, or processions which may take place on the grounds," and holding that "demonstrations on or near legislative grounds fall within the protections of the First Amendment"). "Courts have long recognized," after all, "that the Capitol Grounds as a whole meet the definition of a traditional public forum: They have traditionally been open to the public, and their intended use is consistent with public expression." *Lederman v. United States*, 291 F.3d 36, 41 (D.C. Cir. 2002).

Indeed, "[i]t is well established in this jurisdiction that the United States Capitol Rotunda, which is at the very heart of the United States Capitol Building, is a 'unique situs for demonstration activity' and 'a place traditionally open to the public ... to which access cannot be denied broadly or absolutely.'" *Berg v. United States*, 631 A.2d 394, 397–98 (D.C. 1993) (citations omitted). Accordingly, both

13

Executive branch and Legislative branch officials have actual authority to make time, manner, and place restrictions on demonstrations on the Capitol Grounds insofar as such restrictions are consistent with the First Amendment. *Lederman*, 291 F.3d at 43; *see also United States v. Grace*, 461 U.S. 171, 177 (1983) (discussing authority of government officials to make and enforce reasonable time, place, and manner regulations that affect protected speech).

Then-President Trump invited people to attend his rally in Washington, D.C., on January 6, 2021, and directed supporters to go to the Capitol to protest what he described as outcome-determinative fraud in the election. Just as the Supreme Court found in *Cox*, individuals "would justifiably tend to rely on" these statements about *where* they were allowed to protest. *See Cox*, 379 U.S. at 569. At the very least, such evidence would establish the necessary preconditions to present the defense of public authority to a jury. Indeed, the Supreme Court in *Cox* noted that evidence that "the highest police officials of the city, in the presence of the Sheriff and the Mayor, in effect told the demonstrators that they could meet where they did," was sufficient to bar conviction for violating a state statute proscribing picketing near a courthouse. *Id.* at 571. The Court should allow similar evidence of statements by the "highest [Executive branch] official of the [United States]" about *where* his supporters should protest to be presented in this case.[5]

---

[5] The Supreme Court in *Cox* also noted that testimony by the Police Chief that he "did not subjectively intend to grant permission" to the demonstrators was irrelevant given the absence of any evidence that "this subjective state of mind was

14

The government also warns, however, that "to allow [the defendant to present a] public authority defense based on the President's false statements of law would implicate both the Take Care clause and the presidential oath of office, and more fundamentally question the nature of the rule of law in America." Gov't Mot. (ECF 37) at 10-11. The government's hyperbole misses the point. The public authority defense does not require proof that former President Trump actually went through the official steps required to direct the Secretary of the Department of Homeland Security or the Federal Protective Service or the Director of the FBI to modify the restrictions on protesting on the Capitol Grounds on January 6, 2021.

All that is required is evidence that he possessed the authority to do so, and that he communicated approval of the conduct at issue. *See Alvarado*, 808 F.3d at 485. Just as a civilian authorized to conduct a controlled drug purchase at the behest of a rogue police officer could assert a public authority defense, so too can a protester who evaded barriers to the otherwise public areas on Capitol Grounds assert that such conduct was authorized by the statements made by the former President.

Quoting Judge Howell's opinion in *United States v. Chrestman*, 525 F. Supp. 3d 14, 32 (D.D.C. 2021), the government maintains that "[n]o American President holds the power to sanction unlawful actions because this would make a farce of the rule of law." Gov't Mot. (ECF 37) at 10. Indeed, the next sentence in *Chrestman*

---

ever communicated to [the defendant], or in fact to anyone else present." *Cox*, 379 U.S. at 570 n.4.

quotes the Supreme Court's observation in *Cox* that "no Chief of Police could sanction 'murder or robbery.'" 525 F. Supp. 3d at 32 (quoting *Cox*, 379 U.S. at 569).[6] But all this means is that the public authority defense may not bar conviction as to all of the counts contained in the Superseding Indictment – namely the ones that allege assault or acts of violence, if such conduct was not authorized by a public official. Just as in *Cox*, criminal convictions predicated upon protesting on Capitol Grounds may be barred by a preponderance of evidence establishing authorization of that conduct by an Executive official with the authority to do so. But if Mr. Easterday engaged in other conduct that was not authorized by a suitable public official, criminal liability for such conduct would not necessarily be subject to the public authority justification.

---

[6] As the government has maintained elsewhere in the context of a "federal murder statute," "there is no general bar to applying the public authority justification to such a criminal prohibition." *See* Office of Legal Counsel's Memorandum Re: Applicability of Federal Criminal Laws and the Constitution to Contemplated Lethal Operations Against Shaykh Anwar al-Aulaqi, attached as an appendix to *New York Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 129 (2d Cir. 2014). The OLC memorandum at issue addressed whether civilian employees of the Department of Defense or the CIA would be potentially culpable for violating U.S. criminal laws based upon the killing of a U.S. citizen overseas in the context of an armed conflict. Under international law, combatant immunity (i.e., protection from criminal liability) ordinarily does not extend to civilians (such as CIA or DOD civilian employees) engaged in armed conflict. Nonetheless, the OLC memorandum concludes that such civilians acting on behalf of the U.S. government would be protected against culpability under U.S. federal law for murder of a U.S. citizen overseas pursuant to the public authority justification. *Id.* at 144. Presidents, in other words, have more authority than police chiefs.

In any event, as stated above, the Court should deny the government's motion in limine, and decide upon the admissibility of evidence in the full context of the trial.

Respectfully submitted,

**ISREAL JAMES EASTERDAY**

By counsel,

/s/ Geremy C. Kamens
Geremy C. Kamens
Va. Bar No. 41596
Federal Public Defender
Office of the Federal Public Defender
1650 King St, Suite 500
Alexandria, VA 22314
703-600-0848
703-600-0880 (fax)
Geremy_Kamens@fd.org

Brittany Davidson
Va. Bar No. 90660
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King St, Suite 500
Alexandria, VA 22314
703-600-0817
703-600-0880 (fax)
Brittany_Davidson@fd.org