UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ISREAL EASTERDAY,<br><br>Defendant. | Criminal Action No. 22-404 (JEB) |

MEMORANDUM OPINION

Defendant Isreal Easterday was a member of the crowd that stormed the U.S. Capitol on January 6, 2021. He is charged with multiple criminal counts related to such conduct. With trial arriving this month, the Government has filed a Motion *in Limine* relating to seven categories of evidence and argument. The Court will largely grant the Motion.

I.  **Background and Legal Standard**

Easterday has been indicted on nine counts: Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count I); Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b) (Counts II and III); Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(1) (Count IV); Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(b)(1)(A) (Count V); Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A) (Count VI); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D)

1

(Count VII); Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count VIII); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count IX).  See ECF No. 35 (Superseding Indictment).  The Government has now filed a Motion *in Limine* covering numerous evidentiary issues.

"[M]otions *in limine* are a means for arguing why 'evidence should or should not, for evidentiary reasons, be introduced at trial.'"  Graves v. District of Columbia, 850 F. Supp. 2d 6, 11 (D.D.C. 2011) (emphasis omitted) (quoting Williams v. Johnson, 747 F. Supp. 2d 10, 18 (D.D.C. 2010)).  They "are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'"  Id. at 10 (quoting Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990)).  The court has "broad discretion in rendering evidentiary rulings, . . . which extends . . . to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial."  Barnes v. District of Columbia, 924 F. Supp. 2d 74, 79 (D.D.C. 2013).

Although state and federal rulemakers have the prerogative to fashion standards for the inclusion of evidence at trial, the Constitution guarantees to criminal defendants the right to a "meaningful opportunity to present a complete defense."  Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)).  This limits courts' ability to impose "arbitrary" rules of evidence, including those that exclude "important defense evidence" without serving "any legitimate interests," or are otherwise "disproportionate to the purposes they are designed to serve."  Id. at 324–25 (internal quotation marks omitted).  At the same time, it falls within a court's discretion to exclude evidence that is not relevant or whose probative value is outweighed by prejudicial factors.  Id. at 326; see also id. at 330 (noting that

evidentiary rules seek to "focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues").

**II.     Analysis**

The Court considers in turn each of the seven types of evidence the Government seeks to exclude, grouping categories where appropriate. See ECF No. 37 (Gov't Mot.).

    A. Camera Locations

The Government first moves to exclude information about the precise locations of Capitol Police cameras, citing national-security concerns. Id. at 3–6. It also requests that, should the defense believe during the course of the trial that such locations have become relevant, the Court conduct an *in camera* hearing to resolve the issue. Id. at 5–6. The Court recently granted a virtually identical motion with the same proviso in another January 6th trial. See United States v. Mock, 2023 WL 3844604, at *2 (D.D.C. June 6, 2023). It reaches the same conclusion here, particularly because Defendant makes no real argument for why this evidence would be relevant. See ECF No. 42 (Def. Resp.) at 3–5.

Defendant is unlikely to need to probe the precise placement and scope of individual security cameras; general descriptions of each camera's location, along with the video footage each shows, should suffice. The Government, moreover, raises significant national-security concerns with identifying camera locations, which would reveal areas not under video surveillance and could result in security breaches. See Gov't Mot. at 4–5. The Court will accordingly preclude the defense from questioning witnesses about the precise location of Capitol Police cameras but will allow *in camera* proceedings should Easterday establish during trial that presentation of such locations is necessary.

B.  Secret Service Tactics and Operations

The Government next moves to limit cross-examination of U.S. Secret Service witnesses about specific agency tactics and operational details of its emergency protocols for protecting high-ranking executive-branch officials at the U.S. Capitol. See Gov't Mot. at 6–8. Out of a concern for national security, the Government requests that the questioning of such witnesses be limited to whether the Capitol and its grounds were "restricted" on January 6. Id. at 7–8. Easterday opposes the Government's request but never offers any substantive argument for why the Court should deny this Motion. See Def. Resp. at 3–5. Because the Government represents that the tactics and protocols at issue will be beyond the scope of direct examination, the Court will exclude such testimony — with the caveat that Defendant may cross-examine within the scope of direct testimony should the Government elicit these details there. See United States v. Bru, 2023 WL 4174293, at *2 (D.D.C. June 26, 2023) (granting identical motion).

C.  Entrapment-by-Estoppel Defenses

The United States next turns to a potential affirmative defense it wishes to prohibit, known alternatively as "entrapment by estoppel" or the "public authority" defense. See Gov't Mot. at 8–13. It specifically seeks to block Defendant from arguing that either former President Donald Trump or the Capitol Police, by word or deed, authorized his actions on January 6. Id. at 8–12 (Trump), 12–13 (Capitol Police).

   1.  *President Trump*

The Court once again concludes that Trump's statements "cannot support an entrapment-by-estoppel or public-authority defense." United States v. Carpenter, 2023 WL 1860978, at *3 (D.D.C. Feb. 9, 2023); see also Bru, 2023 WL 4174293, at *2 (same). In its prior Opinion so holding, the Court relied on Judge John Bates's thorough analysis of the issue in United States v.

4

Sheppard, 2022 WL 17978837 (D.D.C. Dec. 28, 2022). As Judge Bates described there, such defenses are "available only when the official's statements or conduct state or clearly imply that the defendant's actions are lawful." Carpenter, 2023 WL 1860978, at *2 (quoting Sheppard, 2022 WL 17978837, at *9). He concluded, however, that "Trump's statements at the January 6 rally do not plainly state or imply that entering the Capitol or interfering with the electoral certification would be lawful." Id. at *3.

Defendant's protestations to the contrary are unconvincing. He seems to think that there is a legally relevant difference between authorization based on an official's "statement of law" and an "official's authorization of conduct that an actor knows would otherwise violate the law." Def. Resp. at 10–11. Defendant does not elaborate this distinction or otherwise explain how this distinction helps his argument. Even if there is a difference — and the Court is hard pressed to find one — he still does not point to any statement or action by President Trump that he relied upon or that could render his actions lawful. Nor does he contend that the former president had the authority to waive the criminal laws relevant to this case. See United States v. Eicher, 2023 WL 3619417, at *3 (D.D.C. May 23, 2023) (explaining that these defenses are unavailable "where a government actor's statements constitute a 'waiver of law' beyond his or her lawful authority") (quoting United States v. Chrestman, 525 F. Supp. 3d 14, 32 (D.D.C. 2021)). The Court, to be clear, does not preclude Easterday from introducing evidence about Trump's statements if they bear on Defendant's state of mind that day. But, again adopting the reasoning in Sheppard, it will not permit a public-authority defense.

   2. *Capitol Police*

The Government also seeks to keep out evidence or arguments "suggesting that" law enforcement officials "gave the defendant permission to attack the U.S. Capitol." Gov't Mot. at

8. The Court finds that such a ruling would be premature and should await the presentation of evidence at trial. It concluded as much in Carpenter and sees no reason to deviate from that bottom line here. See 2023 WL 1860978, at *3. Such evidence may be admissible, for instance, to the extent that police inaction or purported invitations to enter restricted areas actually affected Defendant's knowledge or intent. The Court nonetheless will disallow a closing argument to this effect unless Easterday presents "sufficient evidence from which a reasonable [factfinder] could find for the defendant on that theory." Id. (quoting United States v. Nwoye, 663 F.3d 460, 462 (D.C. Cir. 2011)).

      D.  First Amendment

Next up is the Government's request that the Court prevent Easterday from arguing that he "enjoyed a First Amendment right to protest inside the restricted area around the Capitol or inside the Capitol Building itself." Gov't Mot. at 13. The only relevant question here is whether, as applied to Easterday, the restrictions in place on January 6 violated the First Amendment. The Court again concludes that they did not. See Bru, 2023 WL 4174293, at * 3 (same).

The interior of the Capitol building is "a nonpublic forum where the government may limit First Amendment activities so long as the restrictions are reasonable in light of the purpose of the forum and are viewpoint neutral." Sheppard, 2022 WL 17978837, at *5 (internal quotation marks omitted) (quoting United States v. Nassif, 628 F. Supp. 3d 169, 180 (D.D.C. 2022) The restricted exterior areas of the Capitol, meanwhile, constitute traditional public fora that the Government may close only if the restrictions "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." Mahoney v. United States Capitol Police Bd., 566 F. Supp. 3d 1, 9 (D.D.C.

6

2022) (quoting Mahoney v. Doe, 642 F.3d 1112, 1117 (D.C. Cir. 2011)).  The Government's restriction here satisfies both standards: it was content neutral and narrowly tailored to safeguard the ongoing electoral-certification process, left ample alternative channels of communication available, and was reasonable in light of the ongoing legislative proceedings.  Indeed, the Government cites numerous examples of other courts' upholding similar closures for similar reasons.  See Gov't Mot. at 13–14 (citing Menotti v. City of Seattle, 409 F. 3d. 1113, 1129–30 (9th Cir. 2005) (upholding order closing parts of downtown Seattle to protests during World Trade Organization conference as security measure); Marcavage v. City of New York, 689 F.3d 98, 105 (2d Cir. 2012) (upholding sidewalk closures in area around 2004 Republican National Convention at Madison Square Garden and explaining in particular that "there can be no doubting the substantial government interest in the maintenance of security at political conventions") (internal citation omitted); Bl(a)ck Tea Soc'y v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004) (same for 2004 Democratic National Convention in Boston); Citizens for Peace in Space v. City of Colorado Springs, 477 F.3d 1212, 1222 (10th Cir. 2007) (same for NATO meeting)).

Because the Capitol Police and Secret Service's restricted perimeter was consistent with the First Amendment, Defendant may not argue that he enjoyed a First Amendment right to protest in the building or protected grounds.

E. Other Arguments

Finally, the United States asks the Court to bar evidence or arguments regarding: 1) jury nullification, 2) the punishment Defendant is facing or collateral consequences of a conviction, and 3) Defendant's good conduct or relative culpability compared to other January 6 defendants.  See Gov't Mot. 14–18.  As to categories one and two, Easterday concedes that these arguments

7

are "plainly inappropriate," so the Court will grant the Motion as to these. See Def. Resp. at 1. When it comes to the last category, however, the more prudent course is to rule on specific issues as they arise at trial. After all, Easterday's conduct — good and bad — on the day in question is generally admissible. The Court will therefore deny the Motion as to this category.

### III. Conclusion

The Court, accordingly, will grant in part and deny in part the Government's Motion *in Limine*. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  October 12, 2023